All right, so I will ask that the next case, and I know we have a number of counsels. If you would please come up. So we understand that counsel for Davis would like to reserve two minutes for rebuttal and counsel for N.A. would like to reserve one minute for rebuttal. Is that correct? Yes, Your Honor. All right, then go ahead, please. Thank you. Good morning, and good morning, Your Honors. My name is Alicia Cobrey, and I represent the victim petitioner, Joshua Davis. The district court erred in holding that it lacked authority to reopen the defendant's sentencing under the CVRA. Mr. Davis was undeniably denied his right to a full and timely restitution as provided in law, and to bring a motion under the CVRA, it was not necessary for the victims to prove that they discovered further losses. The district court apparently believed that was necessary because of the well-established law that the CVRA does not expand substantive restitution rights, but Mr. Davis is not seeking any expansion of any substantive rights. There's no dispute, no real dispute, that the district court found Mr. Davis was not afforded the correct amount of restitution here, and Mr. Davis is solely seeking to use the CVRA as the procedural mechanism, which is exactly how it was intended to vindicate those rights. Mr. Cobrey, the time is short, so I wanted to jump into the concern in the focus order. Was a prosecution underway when this motion was filed? So, Your Honor, I think whether a prosecution is underway or not, you know, either way, Mr. Davis is entitled to relief. I think there are good arguments for why the wouldn't be under D3, would not be entitled to, whether they're entitled to relief, there's a different procedural question about whether procedurally it's possible to get that relief. That's true, Your Honor. I mean, but in other words, Mr. Davis is seeking relief under D3 and the defendant, I think there are good arguments to say that the defendants here are still quote-unquote being prosecuted. What are those arguments? Oh, well, Your Honor, I think, you know, the district judge still supervises the case if there's a violation of supervised release, it's going to come before the district judge. I mean, I think there's a whole raft of this court's decisions, like the Supreme Court's decision in Dolan and other decisions that this court had, like Moreland and Fu-Sheng Kuo, in which the district court continues to exercise supervisory authority over the restitution orders, can amend the restitution orders, and any habeas petition, of course, is going to be filed in the same district court. But those are all separate proceedings. What's the function of D5, we'll just say? So D5 does provide a specific way to open, reopen after sentencing, and it does so in which the equities are arguably even stronger for that, where you have a discovery of further losses. But it sets a timeline, and it requires good cause. And here, the motion's coming without those procedural protections. So why would we read D5 to set an even higher bar for reopening when the equities are even stronger than in this case? Well, I don't think, if what Your Honor is referring to is 3664 D5, the further loss provision, I don't think that that relates to a motion to reopen. I think it's a circumstance where that provision says that if a defendant discovers further losses, then there is a deadline set, 60 days, in which the victim is required to file and ask the court for relief. But that's a separate argument. But yet, under your theory, notwithstanding that, a similar situated person could just bring the same motion under D3 at any time. No, because I think, Your Honor, 3771 D3, that's the CVRA provision that our argument principally is relying on. That is a provision that allows to ensure that full and timely correct restitution was ordered. In the case of 3664 D5, which is the further loss provision, full and timely restitution was ordered at the time, and the victim just discovered further losses. But what we're arguing here is that there was an error ab initio. I think there's no real dispute about that here, and that the correct procedural mechanism for that is under the CVRA to vindicate the victim's rights under 3771 D3. That is the basis for our CVRA motion. Isn't the purpose of 3664 D5, including the 90-day limit, to basically say restitution decisions must come to an end at some point for finality? And it imposes certain time limits for that. If there were mistakes that were made earlier, fine, correct them, but within those time limits. There are general time limits set, but I think, you know, this court, the court in Dolan said those time limits are not jurisdictional. And multiple cases, including in this court, Moreland, Fuxian Quo, these are cases in which, you know, the court has, you know, amended restitution orders long, long after they were issued. And particularly in a case like this, where the victims were not at fault, it was, I think the government has properly accepted responsibility for the errors that occurred here, that, you know, this is an appropriate circumstance for the court to be able to, you know, to allow the victims to vindicate their rights under the CVRA. I mean, this is what the CVRA was designed to address. Can I clarify your position? If we disagree with you that the victims did not subsequently allow a motion to reopen, if we disagree with you on the further loss point? Well, we're not relying, I mean, in other words, yes. I mean, I'm sorry, I should have said 3664 D5, we were not relying on that. If you disagree with us that there was a discovery of further losses, then our argument is based on the CVRA alone, 3771 D3, a motion for relief to vindicate the victims' rights under 3771 A6, the full and timely restitution. Okay, but it sounds like you're making a new argument today than you did in your brief. You're saying any time a defendant is on supervised release, or in this case, probation, or still incarcerated and going to be subject to supervised release upon release from incarceration, that they're still being prosecuted? Is that the argument I heard this morning? No, Your Honor. I was actually keying off, I think what Judge Johnstone, I thought I heard the question was, which was based on the order that the court issued in Ray Wild, and whether this case falls under the being prosecuted, or a prosecution is not underway. I don't think the court needs to get into that question here. I think either way, a motion for relief under the CVRA is authorized. And so, you know, if the court wants to- How is, in which the defendant is being prosecuted for the crime, how is that being satisfied here when judgment has already been entered? So I think for the reasons that I articulated, but for the reasons that I already articulated, which is that the prosecution, there are elements of the prosecution that remain, but I think the important point here- So you don't think that if no prosecution is underway applies here? I do. I don't think we need to take a position. I mean- You don't want to choose? You want to say you apply over both? I don't think this court needs to choose at this point. I think we'll take it if the court wants to find that no prosecution is underway because the judgment was entered, that's fine, we win. And if the court wants to find that the defendant is still being prosecuted, we win. Either way, the CVRA permits a motion for relief under D3 to reopen a sentence. The CVRA expressly mentioned in D5, motions to reopen a sentence. So if the crime occurred in a different district, you would have a district court that had nothing to do with the prosecution, notwithstanding what you just referred to with respect to habeas and all these other things that are expected, even after sentencing, whether the prosecution is underway to happen in the same district, to suddenly leapfrog across the country to a different district? I agree it's an unusual result, and that's why I think that's an argument for the dissent in Ingray-Wild. I think that that, you know- But again, it's not a question I think this court needs to reach here because the court could equally find that no prosecution is underway. In this case, certainly this motion was brought both where the prosecution was occurring and also where the crime occurred. So we don't have that jurisdictional issue. One of your theories is that the prosecution is underway until a convicted defendant has been fully released from incarceration and the period of supervised release and or probation has run its course and is no longer under court supervision. At that point, there is no longer a prosecution underway. Your Honor, I'm just offering that up to the court. One of the theories you're offering. That's one theory, but we don't think one way or the other. I don't necessarily have to take a position. If the court wants to find that there is no prosecution underway because judgment was already entered here, that does not affect Mr. Davis's eligibility. Is there any case law that supports that reading of the phrase or the term prosecution underway? Not that I'm aware of. So we can't find that in Moreland and Fushenko that you just cited earlier. That won't support that proposition that Judge Simon just articulated? I think it only supports it to the extent that you see that the district court continues to exercise substantial supervisory powers to the extent that there's going to be a motion, for example, under 3664 D5, the further laws provision. That's going to be brought before that same sentencing district judge. I guess Congress used the term prosecution, not criminal proceeding or something that's referring to what's happening in court. It's referring to the government is doing something currently, actively prosecuting. I agree, Your Honor. The language seems a little bit not exactly directed toward that situation. But again, regardless of which way you come out on that question, there's either a prosecution underway or there's not a prosecution underway. And in either event, Mr. Davis filed his motion in the correct place with where the crime occurred and where the prosecution was going on. I see I'm way over my time. I believe I'm way over my time. Okay. We'll still give you some rebuttals. Thank you, Your Honor. All right. Next counsel, please. I think I have it here. Thank you. I'm Petitioner N.A., appearing pro se. And I'm hoping to save one minute for rebuttal as well. So I have kind of where I was going to get started to begin my argument, but I also can just kind of take over from where Mr. Cobre was. I think there's two things I would say on that, is that there are two large legislative schemes here that are at play, and that's the MVRA, the Mandatory Victims Restitution Act, and the CVRA, the Crime Victims' Rights Act. And the MVRA came eight years before the CVRA. When it was enacted, there was not this procedural lever to say victims need to get restitution. When the MVRA was enacted, it set the rights. It said victims need to get restitution. But it did not provide a lot of procedures for the way that the victims could push to see those rights happen. And it did not set a lot of the procedures to ensure on the court side and on the government side that those things would happen. So there is some interplay here. I don't think that these two statutes are conflicting with each other. It's just that Congress tried once to get victims restitution and then said, we need additional levers. And so some of the tension here is a lot of the cases Mr. Cobre was referencing are about the MVRA. Those cases show that this court and the Supreme Court have said, if you don't follow the procedures in 3664 D5 exactly, that's a non-jurisdictional issue. And it does not make sense, in line with the statute of ensuring that victims get full restitution, to deprive them of restitution if there were some mistakes made on that. And so he mentioned some. I would point you, I have some language here from the USV Delegante. This sentence here, I think, just touches on this exactly. It says, failure to comply with the MVRA's procedural requirements does not divest the court of to amend a restitution order. And I can give you more of these cases. This court has addressed whether or not it still has authority under the MVRA, even when the procedure wasn't exactly right. I guess whether there's jurisdiction or whether the rules provide for the making of a motion, if it's jurisdictional, it can't be waived. It makes that difference. But if the rules don't provide for the making of a motion, any motion for restitution, which is what the CVR language says, which includes the restitution that, I think as you suggested, was already provided by the MVRA, how are we supposed to read that so that D3 isn't an implied repeal of 3664 D5? That it creates this gaping hole to allow anyone at any time in district court to reopen something that 3664 purports to settle. So I think if they had meant to repeal that, Congress would have said it. The whole purpose of the CVRA was to give victims more opportunity to step in and make more claims. I disagree with the characterization that the MVRA doesn't provide for that. 3664 D5 says the victim shall seek an amended, I'm paraphrasing, but shall seek an amended restitution. If that doesn't entitle the victim, that's the only, and this is a point that I've made in the brief, that's the only requirement in that section that puts a mandatory requirement on the victim. All the other restitution steps are mandatory steps for the government and for the court. That is the only place where it says the victim shall do something. And so I would say that that entitles a victim to make a motion on the discovery of subsequent or further losses, and that was eight years before the CVRA. So I think that as a standalone argument does entitle victims to make such a motion, as we did here. We discovered that the losses were not including everything that they should have, and I can go into that in detail. The 3663A, the actual substantive restitution, discusses value. It doesn't discuss losses. Why isn't what was discovered here a changed value rather than a loss? So maybe I have a little bit of difficulty understanding that distinction between value and losses. Well, it's Congress's distinction, so I have the same difficulty. So explain it to me. I think the distinction is between property and the value of losses here, because the way I think many people want to read 3664D5 is that restitution was set, and then one of the victims says, there's another piece of property that I discovered that we didn't know about before, and that was stolen or taken or deprived, and that should be included in the restitution. So new property, but it says losses, and when we're looking at the section that talks about, or it says further subsequent losses, when we look at the section that discusses how to set restitution, it says the court's going to determine an amount subject to restitution. That amount subject to restitution sounds to me like the amount of losses, much more than it says was the property exactly correct. In this case, the victims repeatedly told the court, or told the court through the government and in the investigation, what the correct property was. But then the probation office, which is an extension of the court, and the government never communicated how they had determined the value of those losses, which I think is what you're getting at. And so the first time we learned of the value of the losses as determined by the court in this process was when judgment was entered. You mentioned Delahunty and your friend before you mentioned Dolan, about the jurisdictional issues. Weren't those situations where the government moved to reopen restitution, not a victim? I think that's correct. And isn't that a relevant distinction when we're thinking about time limits here? Or tell me why it's not a relevant distinction. If the government moves to reopen a restitution hearing, the precedent is pretty clear, the time limits are not jurisdictional. Why should that also be the rule when a victim, not the government, moves? In other words, shouldn't the government be given some more leeway to reopen that's different from victims? Otherwise, victims can move to reopen forever. I think I understand your question, and I would say under the MVRA, I'm not sure why they need to be different, because it is very limited what it says about when a victim, like I argued earlier, shall seek an amended restitution. I think that saying the victim shall is an indication that they need to do something. They need to make a motion in that case. On the issue of whether or not you would give jurisdiction when the government moves versus when the victim moves, I think if you look at the MVRA, as the Supreme Court has said, as a pro-victim statute that seeks the purpose is to ensure that victims are rewarded full restitution, I think that the who moved to get the restitution right shouldn't matter. And as a jurisdictional question, whether the court has authority to reach that question shouldn't matter on who asked them to fix it, in my opinion. When we get to the a situation like this where victims are limited in what they can do, and so I agree that the CVRA actually gives victims more opportunities. It enumerates their rights, and then it gives them the ability to make a motion to assert those rights on their own behalf. Prior to that, I don't think they could have come in at any time. They were really limited to 664 D5. After that, with motions, whenever they feel like they're not being heard and any of those rights going down the list, and we're at A6, which is the right to full and timely restitution. I'm over time, but I'm happy to take other questions. Okay. I have one question that's not related to this. What's your basis that you deserve the day-high price on the date of sentencing versus some average versus anything else? Well, ultimately, I'm happy to leave that to the court's discretion. I think if it goes back to the district court, I'm happy to submit a brief on that. Just as I was looking through cases, I saw restitutions that were calculated for stock thefts and things like that where they use the day-high price. I think a day-high or an average is better than a low. The date of sentencing in this case for Mr. Falk, there was particularly a lot of volatility, so I think it's a swing of almost a million dollars on that specific day. The price has gone up since then, and so there is a question if we go back to the district court of if we reopen sentencing, do we need to use a new date? Or if we're just amending under the MVRA, do we still use the dates of the original sentencing? To be frank, I'm flexible on all of those issues. I would be happy if the court just re-looks at this undisputedly incorrect restitution number and tries to follow the law to correct it. Those are all kind of tangential issues. I would argue for the day-high price or even the average because I have seen some cases that use day-high prices for stocks in the restitution context. All right, thank you. We'll give you some time for rebuttal. Let's hear from the government now. Thank you. Good morning. May it please the court, my name is Mary Jean Chan, and I represent the United States as a real party in interest. This court should grant the writ of mandamus on the limited ground that the district court erred in finding that further losses under the MVRA, that is 3664D5, excludes losses that are not included in the initial claim and that are also not included in the final determination of the restitution amount. That is a limited round. Just to address the focus order that the court issued, the government's position is set forth in the solicitor general. Can we go back to Judge Johnstone's question to your prior counsel? The statute is very clear in distinguishing value from loss. I guess I'm having a little difficulty with your argument. How can you say there's a discovery of further loss? They knew exactly how much ethereum was stolen, reported that to the government multiple times. To say there's new discovery of loss seems a little bit of a stretch. We think that if you look at the text of 3664D5, it is structured specifically in relation to the determination, the final determination of the restitution amount. The restitution amount is set forth under 3663B1, and that calculation for that amount is based upon the higher value of the value of the property, either at the time of the theft, in this case, or at the time of sentencing. There is a relation between the losses in 3664D5 as per the calculation of the restitution amount. It is the subsequent discovery of losses per and vis-a-vis that final determination that is at issue. That is why we think that the text supports the government's interpretation here that it's more capacious than what the district court believed it to be. That said, it is not a limitless provision. There are, as this court already pointed out, several provisions that really limit this, and they can do serious work. One is the good cause for the failure to include that amount in the initial claim. Here, the district court actually stopped short of finding that there was good cause, said that there seemed likely to be good cause, but didn't actually go all the way of finding that there was good cause. In this case, also, there was the timeliness, but that also does work, the 60 days. There's also other provisions that keep it from being an indeterminate restitution opening mechanism. For example, as federal insurance, the Second Circuit case says, restitution doesn't have to be as final as other aspects of it. The Congress specifically provided that victims have a substantive right to full and timely restitution. Section 3613B also indicates that restitution liability ends at the later of 20 years post-judgment or 20 years post-release. Again, that also at least sets kind of a final period of time, so it is not an indeterminate period of time in terms of the reopening of this. Ms. Chan, you were about to refer to the SG's brief in a case for the government's position on 3771D3. Yes, your honor. That is set out at 2022 Westlaw 43769 for this court's reference, and it's at pages 18 to approximately 20. That sets forth the government's position that the victim's motions here, for example, to reopen the sentencing, to amend the restitution orders, fall within 3771D3's provision for motions filed, quote, if no prosecution is underway. In which case is that? That is the petition for cert. Ms. Chan, if we deny the petition, what's the government's position on whether the victims have any other avenue for relief given the conceded error in this case? They don't, which is one of the reasons why the purpose of the CDRA and MDRA support the government's interpretation here, which is that the limitation shouldn't be on further losses. In the case, I think this court knows that the government made many efforts to involve the victims in the restitution calculation process, but for many reasons, some which are totally understandable, that did not succeed. There are other cases in which victims might be completely not at fault, but under the district court's interpretation, they would lack the ability to seek mandamus or seek the amendation of a restitution order purely based on the government or probation office's error or just the district court's error. If the district court just made a mistake in the restitution order. Well, the district court referred maybe to some of the factors that could have led to the string of errors that has led us to this point. Has the government looked maybe at trying to use a little more plain language in its communication with victims so that these things don't slip? I have been, I personally have been communicating with our victim witness coordinators on these victim notification notices, but I think it's also important to note that a number of the victims involved in this case did receive those notifications and understood what to do. That doesn't mean that these victims were not understandable in their failure to do so for various reasons, either in not understanding the victim notification notices or because they had personal circumstances that prevented really paying attention to it or because they made a confusion between the remission process, which is an entirely separate process that typically follows the issuance of the restitution order and that involves the forfeiture section, the MLR section and DOJ. So we think that, you know, just as in many victim cases, we could always do more, we could always do better, but we think what we did here was sufficient. It was certainly sufficient to put other victims on notice. So we believe that the text and the purpose of the MDRA and CBRA suggest that MENDANA should be granted here and remanded to the district court, but it's up to the district court ultimately to find whether there was good cause and timeliness to actually amend the restitution order. So how does 3771 D3 apply? Do you agree with Mr. Davis's counsel that defendants are still being prosecuted because they're either still incarcerated, as to Mr. Falk, or they're still on probation, as to Mr. Dittman and Mr. Herod, or do you think no prosecution is underway? I think it applies. I think that there is no prosecution underway and I think that it applies, but it still does not create a freestanding, limitless ability to make motions. It is limited for non-restitutionary requests under 3771 D5, which requires it to be filed in 14 days and for there to be participation. And those criteria, however, are not relevant where the victim's restitution rights are implicated. So it is unlimited, it is any motion at any time without regard to the prosecution at all, in terms of the ability to file restitution related motions under D3? Because there's no good cause requirement, there are at least some limiting principles on your argument under D5 with respect to losses. No, no, Your Honor, we think that it sort of is a general one, but it's limited by reference to 3664 D5. So in other words, it just says that 3771 D3 sets out kind of some procedural mechanisms and it's a venue provision that says that in certain cases you should file in the court that issued the order that you're trying to reopen, or if there isn't such a case, or for whatever reason, the court... So with respect given D5s, I just noticed there are two D5s and this is very confusing, but given 3771 D5's exclusion of restitution and 3771 D3's venue provision, that incorporates one of the motions asserting a victim's right that can be filed under 71 D3 would be the 64 D5 motion for newly discovered losses that is your position that they can bring. I think that's right. I think what I want to say is that 3771 D3 is a general provision that talks about the victim's ability to bring motions and more specifically the district court's ability to entertain those motions, but it is not freestanding in the sense that it's limited by both 3771 D5 and for restitutionary motions, 3664 D5. So the two D5s, both are limitations on 3771 D3. So 3771 D3, and this is where the government, I think, puts ways from the victim's perspective, does not create a freestanding, free-for-all, limitless motion. Can I follow up on that? Yes. So if, and I want to get the right then is there any avenue for relief, even if there was good cause shown, for the victims to seek relief? We think that it is, if there is good cause under 3664 D5, we think that this satisfies the further losses provision. And so that's where we differ with the district court. The district court, we think, got it right in saying that the right provision to analyze this under is 3664 D5. Say that last sentence again, please. The district court got this part right, which is that the right way to analyze this is under 3664 D5. And then you think the district court got that application wrong in too constrained of a reading of the phrase subsequently discovered further losses. Absolutely, that's exactly right. I'm sorry, I'm very confused now. So you do not believe that 3771 D3 provides the avenue for a motion to reopen to be filed in this case, is that right? We think that 3771 D3 is relevant in terms of talking about motions generally, but it is when we're talking about a motion to amend a restitution order by 3664 D5, so that all the requirements of 3664 D5 apply. And they apply in this case because what the victims tried to do was to reopen the sentence in order to amend the restitution order. And there are several requirements under 3664 D5, one of which is that there has to be further losses. Right, I understand those limitations, but you're saying 377 D3 in the government's view does not provide an independent basis to grant the writ here separate from 3664 D5. Correct. The government's view is only 3664 D5 does. And so what you're urging us to do is to reverse the district court under 3664 D5 by finding good cause, by finding a not-so-constrained reading of subsequent discoveries for the losses, and then we do not have to interpret 3771 D3 at all. The last part is correct. You don't have to interpret 3771 D3, but what we're urging the court to reverse or to grant remandamus on is on only the ground that there was further, there were no further losses here, or that what was discovered here would not qualify as further losses, because we think that they are further losses vis-a-vis the final restitution order. This court does not need to reverse anything on the good cause finding because the district court did not make a good cause finding. So can I understand, so you're saying the limitations in 3771 D5, in your view, do not apply to restitution. Is that right? The language in that provision explicitly says that it does not apply to restitution or impacts the victim's restitution. That's the last part. But you think D3 doesn't apply to restitution unless it's coupled with 3664 D5. Correct. So you don't want to take a position on the if no prosecution is underway point. Is that right? No, we do take a position on that. Well, what is that? And the position is that here there is no prosecution underway, and that is consistent with the SG's position in the In Re Wild case. But the venue provision here really isn't something that's at issue because the motion was filed in the same court, and the court where the crime was convicted, in the same district as that, as well as the actual court in which the crime was prosecuted. I'm sorry if I'm beating a dead horse here, but I still hear a little bit of neighing. If I agree with the dissent in In Re Wild, is there still an avenue here to reopen and find restitution under 3664 D5? And if so, what's that path? So if I understand the dissent in In Re Wild correctly, that would interpret if no prosecution is underway not to be a post-judgment situation, but to be before a prosecution was instituted. And that would probably require a finding that certain rights under 3771A attach prior to the institutional prosecution, such as the consultation and to be treated with dignity as to a DPA. That is not a situation that applies here. And we would say that in that situation, we think that 3771 still provides an avenue for the victims because then they are not even in that part, they are just, they're filing something within the court that the defendant... I'm not following you. Take me through this, if you would, please, step by step. On the assumption that I think that In Re Wild dissent is correct and that prosecution underway, no prosecution underway only refers to a prosecution, has not yet begun, and assume that I disagree with counsel for Mr. Davis that the prosecution has already finished. So under that scenario, what is the path, if any, to afford relief to the victims here? Well, 3664 D5 specifically talks about reopening a sentencing to amend a restitution order. And there's no limitation on whether the judgment has issued. In fact, normally a judgment would have issued if you need to reopen the sentence. And so we think the path forward is through 3664 D5. Why do you have to read Judge Branch's dissent in In Re Wild to even opine on whether the prosecution has concluded? I read it as only discussing the situation where a prosecution has not begun. I think that's probably right, Your Honor. But I think that the question there is not presented here. There is no issue about venue, and there is no issue that there was a prosecution, that there is something actually to reopen. In In Re Wild, there was nothing to reopen. The question was whether they could independently bring a freestanding civil suit to enforce their rights. And that question doesn't have to be answered here. That does not have to be answered here, and this court should not answer it. Ms. Janet, what was the, so in order, this is picking up, I think, on Mr. Andrews' arguments, you've framed 3771 D3 as a venue provision that includes restitution reopening proceedings brought under 3664 D5. But, of course, 3664 D5 preceded the venue, so why would 3664 D5 rely on 3771 D3 at all? Or what was the status of, where did proper venue exist under 3664 D5 before 3771 D3? I mean, I think that that is a good point, Your Honor, which is that you can just simply rely on 3664 D5. I think the CVRA was more generally trying to provide a clearer avenue for victims to participate in these criminal proceedings because they otherwise don't have a role, and they are entirely dependent on the government to advocate for them. And so, I think that... But the reasons I have some difficulty with that is that 3771 D3 says the rights described in subsection A shall be asserted in the district court, and in the language that we've been discussing, in which the defendant is being prosecuted for the crime or if no prosecution is underway, and subsection A6 is the right to full and timely restitution as provided in law. So, that seems like that is a stand-alone CVRA provision saying you are getting a substantive right to full and timely restitution in A6, and then the way that you assert that right is through D3. I guess I don't see why you have to incorporate 3664 D5 when there's no reference to it in this statute. The statute could be self-contained. Well, I don't think that... I think that for the reasons of finality and for various reasons, I don't think that that is the right interpretation of 3771 D3. I think that also that the right to full and timely restitution is not simply in 3771 A6. I'm losing it for the moment here, but I believe it is in several other provisions of the MVRA as well. And so, it is something that the right specifically is in 3664 D5, which specifically refers to the losses, the victim subsequently to discover further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for amended restitution order. And so, just in itself, there it specifically indicates that there is a particular limiting mechanism, and under the canons of statutory construction, it would be completely superfluous if 3771 D3 were meant to be a standalone provision that had no limitations, because then it would just swallow up D5 under both 3771 D5 and 3664 D5. Which is why you need us to agree with your position on whether the proceeding is underway. Which is why we would like you to agree with our position. If the court has no further questions, we ask for a writ on the limited grounds set forth in our briefing. Thank you. All right. Thank you. Good morning, Your Honor. Carmen Esmeraldo from the Federal Public Defender on behalf of Mr. and Counsel for those defendants are in the courtroom with me. And for once, I don't need to reserve any time, which is quite a pleasure. I will confess, Your Honor, that I'm very, very confused. I think that the positions of the other parties have changed so many times that I don't really understand where they stand. But I'll try to clarify certain things. It is my understanding right now that the government agrees with the defendants that 3771 D3 does not create a freestanding right to file a post-judgment motion to challenge restitution orders. It is my understanding that, and maybe I'm incorrect, their position rests at least in part on the fact that the CDRA guarantees the right to full and timely restitution, and I quote here, as provided in law. In other words, the CDRA has not created new rights to restitution, new anything. It has enshrined, it has recognized a regime that already exists. And that makes perfect sense because in 2004, when the CDRA was enacted, we already had a very detailed framework, statutory framework, governing everything from when restitution is available to how we get about to order restitution. So with that in mind, I would like to maybe focus on... Julia, I guess I'd like to ask a preliminary question, a big picture question then. Would your reading then mean that the CDRA and everything it incorporates by reference, including the restitution provisions of the NBRA, is unenforceable at the conclusion of a prosecution after sentencing, except for the D-5, the 90 and 60 days for special instances? It is not unenforceable, Your Honor. Victims do have the right to file a petition for maintenance if they are dissatisfied with the restitution order. But what they would like Your Honor to recognize is a standalone motion in the district court that they can file at any time. There are no satisfied to follow the procedure that the CDRA granted them, which is to file for a mandamus. They want this additional avenue where they can go back anytime for any reason and just get restitution reopened. That's my understanding of what they want. But then what would the mandate of a writ of mandamus be if not to grant a motion? Sure, Your Honor, but that assumes that Your Honor finds error under the ordinary standards of appellate review that apply to mandamus petitions. In other words, in deciding a mandamus petition regarding restitution, you have to do what you do in any Not only not look at equitable considerations and try to find a way to help particular petitions because their circumstances are sympathetic or not. Ordinary standards of appellate review will apply. Let me ask you this. If, and this is a very big picture question, if 3664 D5 under the Victim and Witness Protection Act, if 3664 D5 applies and we were to send this case back to the district court to evaluate this under D5 of 64 and to consider whether or not there's good cause within 60 days of that discovery, would there be any unfair prejudice to any of the defendants here? I get there's prejudice. I guess they don't. I get they don't want it. Would there be unfair prejudice? And if so, what would be that unfair prejudice? Well, Your Honor, first of all, the unfair prejudice would derive from the fact that today, if we were to grant restitution to the petitioners, probably they would be entitled to some $11 million. Had they asserted their rights before sentencing, that amount had been much lower. That would have been $7 million. Well, maybe the district court can decide that. Can't the district court decide, well, then the relevant date should be the value or the price as of the date of the original sentencing. Maybe the district court can figure that part out. Well, I think that's an issue of law, Your Honor, and I don't think the district court would have discretion about which day to use. So the district court would have preliminary to decide that legal issue. I don't think it just works like that. The district court can just choose the date. I'm sorry, I didn't understand your argument. You're saying they're prejudiced because, what, you would have fought the restitution amount? Certainly, we would have fought the restitution amount. We would have fought, in the first instance, a restitution amount in the millions when the out-of-pocket losses are in the thousands. We would certainly have fought that, and I'm not going to waste your time with my Eighth Amendment argument, but I'm certainly preserving that. But you can still make that argument, can't you? Certainly. I've looked at the guidelines, right? The restitution amount for which Mr. Falk was held responsible was, what, about $2.8 million, was that right? And for Mr. Dittman, Mr. Harrod, $3.4 million, is that right? Yes. Okay. So if the restitution amount here had actually been accurately corrected, even if you say you would have quibbled with $7 million, let's say you would have gotten $2 million, $3 million, $4 million, that would have increased the guideline range of all three defendants to 70 to 87 months. And in that likelihood, I think it would have been less likely that Mr. Dittman, Mr. Harrod would have gotten probation, and it would have been less likely that Mr. Falk got a 48-month concurrent sentence, so no additional time to his Northern District of Georgia sentence. So if anything, I think these defendants were hugely benefited that the government in probation made this mistake on restitution because the incarceration time, the risk that your clients would have had greater incarceration time had the restitution amount, let's say you would have quibbled and just gotten it up, reduced from $7 million to $2 million, that still under the guidelines would have taken you up multiple offense levels and dramatically increased potential incarceration for two defendants and actually caused perhaps some additional incarceration for the third. So I'm a little difficulty here seeing prejudice when I see actually probably significant benefit. Well, your Honor, first of all, sentencing is just not about numbers, so the mere fact that the guidelines might have been different, and by the way, I don't think we have clarity on that, meaning that we, I personally was not attorney of record, and I don't know how the guidelines were calculated. Well, it was an adjusted offense level of 22 for Mr. Falk and 23 for Mr. Dittman and Herod, and the criminal history was two for Mr. Falk and one for the other remaining defendants, and so it would have been increased by four levels depending on even a smaller increase because it was so close to the 3.5 line. Even a smaller increase in restitution would have bumped up each of these defendants' adjusted offense level by at least two or four points. Sure. I agree with that. I'm saying that sentencing is just not a numbers game, and in the situation where an offense level is dramatically increased because of this, we would also have a deconstruction argument about whether the guidelines themselves actually represent the sentencing commission's considered judgment. I understand that, but if this is sent back for resentencing, you will be able to fight the numbers anyway, so I don't see the prejudice, right? Whether you would have been able to fight the restitution amount at the original sentencing or any resentencing, what does that matter? You're still going to have the opportunity, if this is sent back, to challenge the restitution amount, and if it's determined that the restitution amount is accurate, however it's ultimately determined to be, if that is what defendants actually owed by law, I don't see how they're prejudiced by being required to potentially, if that's where this case goes, being required to pay the restitution they would have perhaps been required to pay by law. I think I disagree with your honors because when defendants are required to pay restitution by law as provided in law, that also requires that certain procedures be followed. That requires the government actually prove restitution, and it does not only mean that we create equitable remedies just to ensure that all restitution was created. In this case, we went through this process, the defendants enter certain plea agreements with the government on certain understandings. So when we redo things and reopen things, it's not just a matter of one number here about restitution, it's also about the bigger picture. That's smart. I guess the, since I don't take you to be conceding in this, either the government's or the victim's reading of the statutes here, okay, I guess I would have thought your argument on the equities also includes the fact that what was discovered here was not further losses, but the fact that the government made a mistake in communicating known losses. That's a legal question, your honor, though. And I, of course, my position is that further losses exclude previously known, previously ascertainable losses. But I understood your colleague's to be about the good cause and about the prejudice to my client, to the defendants, not about the legal question regarding what discovering further losses means. Right. And I think what your friend said is the district court, because they didn't reach good cause, we really are just here on the procedural question of whether those have been met. Exactly, your honor. We are here on the legal question and I don't see. Why aren't they losses? I guess if one holds stocks, we talk about gains and losses. And so is it the losses versus the value that's doing the work? Is it the fact that what the victim is discovering is not the losses, but the government's mistake? What is, how would you respond to those arguments that this isn't the government's argument, this isn't controlled by D-5? They certainly have discovered that the district court's order did not include the entirety of their losses as of the time of the sentencing. But that is not enough. Discovering a mistake is just not the purpose of the 3664 D-5. That provision is not an error correction mechanism. It's a carefully, it's the result of Congress carefully balancing the interest in finality with a victim's interest in additional restitution that they could not have discovered at the time of sentencing. Okay, then back to, I think to follow up on my original question at the top of your argument with respect to the CVRA and the ability to bring any motion involving the rights protected by the CVRA. If I take it you agree with the the, that the CVRA does not, that 3771 D-3 does not provide an opportunity for a motion because the prosecution is no longer underway? Correct, Your Honor. Okay. Should we worry that any of the other rights protected by the Crime Victim Rights Act are unenforceable then at the conclusion of a prosecution if we're going to read 3771 D-3 as only applicable before and during prosecution? I don't think you should, Your Honor. First of all, most of the rights provided in the CVRA only makes sense in the context of a prosecution. Do any rights other than restitution make sense after a prosecution? I mean the only one that, that, that might even come into play is the right to be heard at sentencing, right? Because in that situation we already, what about a parole procedure? But nothing else. So your friend argued that the process, that we ought to read this to continue the actionability of Crime Victims Rights Act rights well after judgment. That strikes me that A-4 includes the right to be heard at a parole proceeding. Wouldn't that nullify that right if this only applied before and during a prosecution? Well, Your Honor, we don't have parole anymore, but what about habeas corpus? Look at B-2. Habeas corpus, that's only after the prosecution has ended and this says the crime victim does have some rights with regard to habeas corpus proceedings in state court, right? But, but for state conviction? For habeas, we have specific provisions. Only certain rights apply in habeas and in, for habeas, the right, the CVRA rights actually have to be asserted in that particular proceeding. Right, because B-3 only applies to the rights in A, sub A, not B. Exactly, Your Honor. And to, to go back to, to the, to, to, to address the Weil decision, because I, I hope that's why we're here. Judge Branch, in her defense, got it right. No prosecution is underway. The provision in B-3, 3771 B-3, refers to pre-charging situation, to the pre-charging period. And we know the judge Branch actually got it right because in 2015, Congress actually amended the CVRA to add A-9 and A-10. A-9 is the right to be informed in a timely manner of any plea bargain or deferred prosecution agreement. And then A-10 is the right to be informed of the, generally about the CVRA rights. And when Congress amended the statute in that way in 2015, it actually called out the fact that the Department of Justice had incorrectly interpreted the, the, the CVRA to not apply pre-charge. The, the Judiciary Committee in its, for the House called out this particular problem and specifically provides that it, and, and that clarified that the CVRA was meant to apply pre-charge. Can I try something else on you with respect to A? So not parole, but escape. So there's a right to notice of escape. Does that only apply to pretrial detention? I'm looking at A-2. Again, the concern here is if we read it to only apply up to judgment, it would only protect the CVRA rights that can be invoked up to judgment. It says escape. I, I see, I see that, Your Honor. And in that, in that particular situation. Or release. I mean, set aside parole, any, any release. Well, I don't know what it means by release. I would assume that that's not mean that a defendant has just finished their sentence, but. Are there other mechanisms to enforce that? Let's assume that he does. Let's assume that he does. And the defense and the, the court or maybe DOP or somebody sends a notification. Then what is the remedy for that, for that violation? Let's assume that he doesn't actually, and there is no, and the petitioners would not get that kind of notice. Are we going to put people back in prison because there was a violation? Well, I, I presume we'd try to do what Congress wants us to do. The answer, the answer. Well, you could, right? If it's a violation of pretrial supervision or if it's a violation of supervised release. But that could potentially result in incarceration. That's very different, Your Honor, right? Because in that situation, we actually, maybe in that case, the remedy is having another hearing. It's not necessarily putting back people in prison. That is absurd. We cannot just do that. Right. Not based on this statute, but I'm just saying if there were a supervised release violation based on the, because the legislative history, the accused here does include from Senator Feinstein's statement, it's a pretty broad, it's a pretty broad definition. But the question I have is if Judge Branch is correct and you are correct, then do you really want district courts to be pre-indictment trying to figure out whether a federal offense has been committed and whether an individual is a victim of that offense? I don't even know how district courts would do that without any charge. How would, you know, would we have an evidentiary hearing in the district court? I mean, I'm just looking at the victim, the definition of crime victim, a person directly or approximately harmed as a result of the commission of a federal offense. How is anyone who gets one of these cases, these freestanding cases, supposed to make a determination as to whether someone who is suing constitutes a crime victim without having to make that decision? I understand, Your Honor, that this is, these are some of the concerns of the majority decision in Wilde's post. But again, Congress actually overrode those concerns in 2015 when it added A9 to the first section in 3771. And that is the section that provides for the right to be informed, the victim's right to be informed in a timely manner of any plea bargain, and as particularly relevant here, the right of any deferred prosecution agreement. Deferred prosecution agreements, and as Your Honors know, many times happen completely off the court. That's the essence, it's an extrajudicial contract where the government decides to forego charges and prosecution if the defendant, the potential defendant complies with that. And that is exactly what this, what about A9? The right to be treated with fairness and respect for the victim's dignity and privacy. I don't see that being, I certainly see what you're saying and thank you for the deferred prosecution agreement, but I don't find the A8 to be that limited. But that's even easier, Your Honor, to apply pre-charge. It's really easy to call a victim and to actually tell them that we're investigating a case, that we might be reaching out to offer contact information, to keep them updated about an investigation. That's actually very, very easy. And the fact that's not all right. Okay, don't you think in district court there would be a massive motion by any target or suspected person if one of these lawsuits was brought by someone who is not been charged and someone comes in saying, I am a victim, my dignity is being violated, my privacy is being violated. I just, I'm just trying to be practical here. If I were a district court judge and I got one of these lawsuits, I just can't imagine that the defendant or someone who is a target or a suspect would not challenge this and say, I'm beyond presumed innocent. I haven't even been charged. If I were indicted, I'd be presumed innocent, but I don't even have any of that. And now you want to give rights to someone who's claiming I victimized them? I understand your point. And I think your point actually carries through some of my arguments, because we really, the way I said, the petition's arguments for a freestanding motion to just set aside restitution, final restitution orders, that is indeed giving victims more rights than defendants. But in the pre-charge context, again, Congress already told us that that's what they want to do. They want courts and they want the government to actually do grant or afford victims those CBR rights that are consistent with a pre-charging period. And I'm so sorry. I'm sorry, I guess before. I mean, that's not all right. For example, the right to restitution, of course, it's not going to apply pre-charge, right? To follow up on these concerns as well. So before the amendment to add, before Congress added sections nine and 10, if we are to read, if no prosecution is underway in the district court, in the district in which the crime occurred, which other rights, I'm trying to drill down more into this idea, right? There's no prosecution. You're in the district where the crime occurred. You have the filing of any motion before the prosecution. What other rights would be at issue other than the ones that Judge Coe is raising as concerns, free-ranging assertions of victim privacy when we don't even have charges? So I think the most salient right is the reasonable right to confer with the attorney for the government in the case. And I think actually Congress was particularly concerned about that. And the addition of A-9 was there to emphasize that before entering this out-of-court private agreement with defendants, the government should confer with the victims. They should treat them with dignity and respect. And the fact that not all CVRA rights apply at every single phase of a case, and I'm using the word case very generally speaking, it's no reason to contour the language of the statute and to disregard that in these three we are taught explicitly that one right should be asserted. And I want to emphasize again that the right to restitution in A-6 is the right as provided in law. And we know, I mean all of us know that restitution is determined at sentencing. So the fact for example that the restitution is determined at sentencing does not mean that somebody can assert it at the pre-charge stage. By the same to make that determination. And again, because the right is as provided in law, that final determination must be amended only in those circumstances that the law allows. And that sends us back to 36-64-D-5. And I continue to contend that the meaning of discovering further losses, and I add and emphasize the word discover because the statute does not say only further losses, but if there are further losses. It says if a victim discovers further losses. And the use of the word discover to me doubly emphasizes that what they learn must be new. The fact that they already knew about property, about the value of the property, is not new. And I don't know if I'm over time or way over time, but I'm happy to answer further questions. Does anyone have any further questions? No, thank you. That was very helpful. Thank you very much. Thank you, Your Honor. Just very briefly, three points. First, on the government's argument. There is really no basis for the government's position or the defendant's position that 37-71-D-5 is somehow limited to 36-64-D-5. That somehow the right which is clearly set forth, A-6, 37-71-A-6, to full and timely restitution as provided in law, that only means that the only relief that a victim can get under this broad victim's rights statute is just a pre-existing provision in the MVRA for a new procedural mechanism. Victims have been exercising that right under the MVRA for when they discovered further losses for years and years. There is also no contradiction between 37-71 and that prior provision. The prior provision simply says that if a victim discovers further losses, then there is a 60-day time period in which the victim has to bring those forth. That is totally different from the situation we have here where we have ab initio an entirely erroneous restitution order as district court found. There is just no contradiction whatsoever. As I mentioned before, victims had already long been exercising that right. What is the limit, though? Can a victim file a motion to reopen at any time? Because then limit under your theory, right? That brings me to my point, too, which is latches. This is what the Second Circuit said found sufficient in federal insurance. Under the doctrine of latches, the courts can easily find that if a victim sat on his or her rights, then there is unreasonable delay, and latches applies, and they would not be able to bring a motion. Or if there was some kind of prejudice, and I think as the court pointed out, there really is no prejudice here. Obviously, the defendants can make the same arguments now as they could have made before. But the Second Circuit found that latches was a sufficient safeguard against motions being brought late, and I think this court should find the same. And then my last point is just on the Ingray-Wilde case. No prosecution is underway. The dissent in that case contemplated that a circumstance where there's a post-judgment motion, there would still be relief under the CVRA in that circumstance. In fact, that was one of the dissent's arguments against the majority is to say, well, if no prosecution is underway means post-judgment, then does that mean that the motion has to be brought in the other district? Well, that implies that certainly both sides agree, the majority and the dissent, that in a case where the prosecution is concluded, a motion under the CVRA is proper. There was no dispute about that aspect. No, I thought that was an argument that the defense was giving for why that's an inappropriate interpretation, saying that it makes no sense where the loss occurred in a district where the prosecution occurred. It just makes no sense after the prosecution has concluded to bring a motion under 3771 in an entirely different district. Agreed. Agreed. And I think that's what Your Honor is saying is that that was the argument of the dissent in Wilde. That's exactly right. But that argument implies that there is a proper venue for that, and that would be where the prosecution actually occurred. So I don't think the dissent in Wilde would take issue with the fact that when a motion is brought, that a motion may be brought under the CVRA post-prosecution. Although that's not the only implication. It could be that the implication is after the prosecution has concluded, then there's no further relief under 3771, and you have to bring it under 3664 under an appropriately read understanding of what does it mean to have subsequently discovered losses. It's possible that I don't believe that that's what the dissent said in Wray-Wilde. I don't think the dissent implied that. And there's just no basis in the CVRA to suggest such a thing. There is no language in the CVRA to suggest that a motion is brought under the CVRA post-prosecution. And in fact, you know, D-5 itself, as the court has pointed out, talks about a motion to reopen a sentence. And that would only apply post-judgment. And in fact, cases like Dolan and the other cases allowed restitution orders to be revised post-judgment. If the court has no further questions, we rest on our breeze. Any further questions? No? Okay. Thank you very much. That was very helpful. And go ahead, please. Okay. Thank you so much. I'll try to be very quick here. Our positions have not changed. And in my brief, I lay out there's really three different ways that you can grant us relief here. Even if you take defendant's position that the only right we have under the CVRA was to mandamus on the restitution directly here, which seems to be what Judge Oreck was saying, then the only limit on the time there is latches under federal insurance. And I think that we've shown diligence and other factors to say you could reach the restitution. There's no dispute that it was legally in error. It is not consistent with the statute. And so if that's your view, which to be what Judge Oreck's view was, is that you can overturn a legal error here on mandamus, I think we still have a route to relief. We are also still arguing that the CVRA gives us the right to petition for corrected full and timely restitution. And I joined Mr. Cobray's arguments. We've gone over that a lot. Unless I get a question on it, I won't touch that. Then the third route is the MVRA also provides this subsequent further losses. And so all three of those are in the briefs. The positions have not changed. We have had to kind of deal with this wild situation. You mentioned the VWPA, right? Because the VWPA, that's 3664, right? Yes, I think that that was... That's the subsequent losses. You referred to the MVRA, and I didn't see this coming under 3663A. Did I misunderstand? 63A. So I know that the VWPA was amended, and there are certain... Numerous of these provisions were amended with the CVRA and MVRA. Some of them may have been there even before that, if that could be your question. So your argument is you have a standalone right under 3664D5, and then you think you have a separate standalone right under 3771D3. Is that correct? Yes. And those are somewhat arguments in the alternative. Okay. So you don't agree with the government's argument that you need the combination of 3771 and 3664? I think that the MVRA, which existed before the CVRA, gave victims... It says victims shall. It gives victims the ability to seek an amended restitution, as we did, which we filed in the district court. So we filed a petition to set aside or reopen sentencing or amend the restitution. And if you say this was a motion to amend the restitution, that's under D5, 64D5. Okay. Thank you very much. Thank you to all council. We're sorry to hold you up for so long, but these are really difficult issues, and everyone has provided really helpful insights. Thank you all. And we are adjourned.
judges: KOH, JOHNSTONE, Simon